UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLAL K. AMRANI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, et al.,<br><br>Defendants. | CASE NO. C19-844 RSM<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND GRANTING MOTION TO SEAL |

## I.     INTRODUCTION

This matter is before the Court on Plaintiff's request for a temporary restraining order ("TRO") (Dkt. #6) and request to seal (Dkt. #9).[1]  Plaintiff, Allal Amrani, principally seeks to restrain a foreclosure sale of real estate located at 20704 Des Moines Memorial Drive, SeaTac, Washington.  Dkt. #7 at ¶ 1.  If not restrained, Plaintiff indicates that the foreclosure will occur on June 16, 2019.  Dkt. #6.  Plaintiff filed his Complaint and requested a TRO on the same day. Plaintiff's request is in the form of a one-page letter that provides, in substance:

RE: Urgency – Emergency

My house-residence property is in foreclosure and it is posted for online auction
on the 16th of the month.

---

[1] The Court construes Plaintiff's letter request for the Court seal a letter from his health care provider as a Motion to Seal and addresses the Motion below.

ORDER – 1

My Complaint is to stop the foreclosure and the auction and therefore it is urgent and of emergency nature that my case is reviewed immediately and hope it will be entered into record immediately, and my fee waiver should also be reviewed immediately [and] hope it is approved.

*Id.* (typographic alterations for clarity).[2] However, Plaintiff has also verified the allegations of his Complaint and has filed an affidavit and exhibits. Dkts. #5 and #7. The Court therefore considers the three filings collectively as a Motion for TRO ("Motion"). However, upon review, the Court does not find it appropriate to grant Plaintiff's requested relief at this time and accordingly denies the Motion.

## II. BACKGROUND[3]

Plaintiff alleges that he owns a piece of property in SeaTac, Washington (the "Property"). Dkt. #7 at ¶ 1. The Property was acquired in 2006, by one of the defendants in pursuit of a joint business venture with Plaintiff. *Id.* at ¶ 8–12. The Property was later transferred to the business venture, but payments were missed, and the mortgage went into default in 2011. *Id.* at ¶ 19.

Over the years, Plaintiff has recorded several quit claim deeds related to the Property and has recorded a "UCC Development Real Estate Services Mechanic's Lien" against the Property. *Id.* at ¶ 26; Dkt. #7-4. Concurrently, several of the defendants have continued to seek foreclosure of the Property and have continued to send Plaintiff and his former partner notices at the Property. On December 16, 2016, unspecified defendants filed a complaint in King County Superior Court seeking to foreclose on the Property. Dkt. #7 at ¶ 28. A *guardian ad litem* ("GAL") was appointed for Plaintiff due to significant health issues that were caused, at least in part, by the mortgage default. *Id.* at ¶¶ 39–30. Ultimately, the GAL took actions that Plaintiff maintains

---

[2] Plaintiff has been granted leave to proceed *in forma pauperis*. Dkt. #3.

[3] The factual allegations laid out by Plaintiff are extensive but also appear to leave significant gaps. The Court recounts the facts in the broadest sense as the facts are ultimately of limited importance to the Court's decision.

ORDER – 2

were not in his best interest, including placing Plaintiff's interest in the Property into a special needs trust—for which the GAL was the trustee. *Id.*; Dkt. #7-5. Plaintiff believes that the GAL, a defendant, has acted to the benefit of several of the other defendants in this action. Dkt. #7 at ¶ 34.

Defendant indicates that a foreclosure sale is now scheduled to take place on June 16, 2019. Dkt. #6. Plaintiff's Complaint lays out thirteen causes of action against the ten named defendants. Dkt. #5. Plaintiff's letter requesting relief does not clearly identify what claims he relies upon for injunctive relief. Dkt. #6. However, Plaintiff's affidavit appears to more particularly identify bases upon which the foreclosure sale cannot proceed. Dkt. #7. These appear to include questions as to the ownership of the Property, questions as to the actions of the GAL, questions as to whether his UCC lien is entitled to super-priority such that it must be satisfied before any foreclosure, and whether irregularities in the assignment of notes and deeds of trust preclude defendants' standing to foreclose. *Id.* at ¶¶ 35–44.[4]

### III. DISCUSSION

#### A. Legal Standard for a TRO

To support a TRO, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit employs a "sliding scale" approach, according to which these elements are balanced, "so

---

[4] Plaintiff also alleges that Defendants Danial Womac and Fidelity National Law Group have been acting as a debt collector and have taken actions that violate the Washington Consumer Protection Act and the federal Fair Debt Collection Practices Act. Dkt. #7 at ¶¶ 48–54. But Plaintiff indicates that the attempted collection of "delinquent consumer debt" was from his business partner. Dkt. #7 at ¶ 53. Plaintiff does not clearly establish that he has standing to bring these claims or that they are related to the foreclosure of the Property.

ORDER – 3

that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).[5]

A party seeking a TRO without providing written or oral notice to the adverse party must satisfy additional requirements. Specifically, Federal Rule of Civil Procedure 65 requires that a TRO may only issue without notice if

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). This Court's Local Civil Rules similarly express a strong preference for requiring notice.

> Motions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted. Unless the requirements of Fed. R. Civ. P. 65(b) for issuance without notice are satisfied, the moving party must serve all motion papers on the opposing party before or contemporaneously with the filing of the motion and include a certificate of service with the motion. The motion must also include contact information for the opposing party's counsel or for an unrepresented party.

LCR 65(b)(1).

**B. Plaintiff Has Not Provided Adequate Notice**

On the facts of this case, the Court will not issue a TRO without notice to the Defendants. First, Plaintiff provides no certificates of service showing that any Defendants have been served in this action or provided written or oral notice of this action. Plaintiff files only a blank "Proof

---

[5] The Court notes that there is some question as to whether the Ninth Circuit's "sliding scale" is a separate approach. *See A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) ("plaintiff may also obtain a preliminary injunction by showing 'serious questions go[ ] to the merits' of its claims and a balance of hardships that tips 'sharply' towards the plaintiff, so long as it makes a showing on the other two factors") (quoting *Alliance*, 632 F.3d at 1135) (emphasis added). The Court need not address the question here as Plaintiff would not succeed under either approach.

ORDER – 4

of Service." Dkt. #1-11.  Accordingly, Plaintiff must satisfy the requirements of Federal Rule of

Civil Procedure 65(b)(1) (requiring showing of harm before adverse party can be heard and

indication of efforts to notify or why notice should not be required).

Plaintiff does not attempt to argue that he will suffer imminent harm before the

Defendants may be heard.  In fact, this Court's local rules would specifically protect Plaintiff.

Plaintiff indicates that the foreclosure is to proceed on June 16, 2019.  Under the Court's local

rules,

> [u]nless the court orders otherwise, the adverse party must (1) file a notice
> indicating whether it plans to oppose the motion within twenty-four hours after
> service of the motion, and (2) file its response, if any, within forty-eight hours
> after the motion is served. . . .  If the movant meets the requirements of Fed. R.
> Civ. P. 65(b), the court may grant the motion without awaiting a response.

LCR 65(b)(5).  Had Plaintiff provided proper notice, Defendants would have been required to

respond, if at all, within 48 hours and this Court would still have more than a week to consider

the Motion.  Defendants should be provided proper notice of the Motion.

Plaintiff also does not show that he adequately attempted to give notice or that notice

should not be required.  Plaintiff makes no factual showing that any effort was made to provide

Defendants either written or oral notice of this action or his request for a TRO.  Nor does the

Plaintiff make any argument that notice should not be required under the facts of this case.

Because Plaintiff cannot satisfy the requirements of Federal Rule of Civil Procedure

65(b)(1), this Court's local rules required Plaintiff to "serve all motion papers on the opposing

party before or contemporaneously with the filing of the motion and include a certificate of

service with the motion.  The motion must also include contact information for the opposing

party's counsel or for an unrepresented party."  LCR 65(b)(1).  Because Plaintiff fails to satisfy

ORDER – 5

the requirements for the issuance of a TRO without notice to the Defendants, under either Federal Rule Civil Procedure 65 or Local Civil Rule 65, the Court denies the Motion.

**C. A Temporary Restraining Order Also Is Not Warranted**

Even if the Court were to consider the merits of a TRO, the Court does not believe that those standards are satisfied here. Plaintiff's Motion may raise several issues that warrant further consideration. But Plaintiff does not clearly identify which claims entitle him to injunctive relief and the scope of any injunctive relief. Further, Plaintiff does not provide adequate legal analysis for the Court to weigh his likelihood of success on the merits. Most notably, Plaintiff does not clearly establish whether this Court can exercise jurisdiction over this matter.

Federal courts are courts of limited jurisdiction and a plaintiff bears the burden of establishing that a case is properly filed in federal court. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001). The two main bases for federal court jurisdiction are federal question jurisdiction, where a plaintiff pleads a "colorable claim 'rising under' the Constitution or laws of the United States," and diversity jurisdiction, where a claim is "between parties of diverse citizenship [and] exceeds the required jurisdictional amount, currently set at $75,000. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (citations omitted).

Plaintiff is unable to demonstrate diversity jurisdiction. Diversity jurisdiction requires complete diversity between plaintiffs and defendants. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Here, Plaintiff pleads that both he and his former business partner—Defendant Maruthai Shanmugam ("Defendant Shanmugam")—are residents of King County, Washington. Dkt. #5 at ¶¶ 1–3. This alone precludes diversity jurisdiction.

Plaintiff's Complaint does not allow the Court to determine that federal question jurisdiction is properly invoked. A federal question exists when the plaintiff's claim arises "under the Constitution, laws, or treaties of the United States." 28 U.S. C. § 1331. Plaintiff clearly pleads a claim under the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692 *et seq.* But those claims appear to relate to "delinquent consume debt" of Defendant Shanmugam, making it unclear whether Plaintiff has standing to pursue such claims or whether the activities are related to the Property. On this record, the Court is unable to even determine that the action is properly before this Court, much less that Plaintiff has demonstrated a likelihood of success on the merits.[6]

The Court also cannot conclude that Plaintiff has demonstrated that he will suffer irreparable harm in the absence of a TRO. The Court presumes that Plaintiff lives on the Property, but Plaintiff otherwise does not directly address the issue beyond two paragraphs in his Compliant:

> 135. The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff [], who retains a perfected super priority interest in the Property. Plaintiff will not have the beneficial use and enjoyment of the Home and will lose the Property as a result of numerous fraudulent activities on part of the Defendants, collectively and individually.

> 136. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent

---

[6] Plaintiff also references several other federal statutes in his Complaint, but none appear to clearly provide for federal question jurisdiction. First, Plaintiff references the Truth in Lending Act, but does not make substantive claims under that statute. Dkt. #5 at ¶ 73 (mentioning TILA, 15 U.S.C. § 1601). Plaintiff does make a claim under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617. But again, Plaintiff argues that the violation occurred at the time of the initial loan to Defendant Shanmugam and does not make clear that he has standing to pursue those claims. Lastly, Plaintiff also references 28 U.S.C. § 2409a in his Complaint as providing jurisdiction. Dkt. #5. But that statute cannot provide jurisdiction because it deals with quiet title actions in which the United States is a named defendant. 28 U.S.C. § 2409a. More problematic for Plaintiff, injunctive relief is not available under that statute. 28 U.S.C. § 2409a(c) ("No preliminary injunction shall issue in any action brought under this section.").

ORDER – 7

irreparable loss to Plaintiff.  Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

Dkt. #5 at ¶¶ 135–36.  These overly conclusory statements, however, do not demonstrate that loss of the Property will be an irreparable harm that cannot be remedied should Plaintiff prevail in this matter.  Plaintiff does not appear able to carry his burden of demonstrating that irreparable harm is likely in the absence of a TRO.

### D.  Motion to Seal

Plaintiff submits a letter from a health care provider in support of his filings and has requested that the Court maintain the letter under seal.  Dkts. #9 and #10.  The Court treats the letter request as a Motion to Seal.  The health care letter at issue primarily recounts aspects of Plaintiff's health and attempts to provide the Court some context for its possible interactions with Plaintiff.  While the Court notes the "strong presumption of public access to the court's files," LCR 5(g), the Court finds a compelling reason to seal the letter here.  *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  The letter recounts Plaintiff's sensitive health matters and does not provide any substantive material that the Court need rely on at this point.[7]  Accordingly, the Court finds a compelling reason to maintain the letter under seal at this time.

### IV.     CONCLUSION

Accordingly, having considered the motions and the remainder of the record, the Court finds and ORDERS that:

---

[7] The letter does indicate that the Court may wish to consider appointing counsel for Plaintiff, but the Court need not address this issue as Plaintiff has not sought to have counsel appointed to represent him.

ORDER – 8

1. Plaintiff's letter requesting emergency relief (Dkt. #6) is DENIED. The request is denied without prejudice and Plaintiff may refile a motion for such relief after providing Defendants proper notice.

2. Plaintiff's letter requesting that the Court maintain under seal the letter from his health care provider (Dkt. #9) is GRANTED. The letter from Plaintiff's health care provider (Dkt. #10) shall be maintained under seal.

DATED this 5th day of June 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 9